## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

PATRICIA MCINTYRE,
on behalf of herself and all others similarly situated,

      *Plaintiff,*

    v.

RENTGROW, INC.,
d/b/a Yardi Resident Screening,

      *Defendant.*

Civil Matter No. _____

**CLASS ACTION COMPLAINT**

**TRIAL BY JURY DEMANDED**

## I.    PRELIMINARY STATEMENT

1.    This is a consumer class action brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA") seeking relief for Defendant's widespread violations thereof.

2.    Despite the public availability of court records that conclusively demonstrate that eviction cases have been dismissed, withdrawn, vacated, satisfied, or resulted in judgments for tenants, Defendant routinely fails to obtain up-to-date information pertaining to the disposition of those cases and publish harmful, misleading, and inaccurate tenant screening consumer reports to landlords and property managers in violation of FCRA section 1681e(b).

3.    Defendant's practices harm individual consumers seeking rental housing by prejudicing their prospective landlords with inaccurate, adverse information, thus harming interstate commerce.

## II.    JURISDICTION *and* VENUE

4.    Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §1331.

5.    Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### III.   **PARTIES**

6.      Plaintiff Patricia McIntyre is an adult individual who resides in Philadelphia, Pennsylvania. At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

7.      Defendant RentGrow, Inc. ("RentGrow") is a Delaware corporation that maintains its principle place of business in Waltham, Massachusetts. RentGrow does business as "Yardi Resident Screening." At all times pertinent hereto, Defendant was a "person" and a "consumer reporting agency" ("CRA") within the meanings of 15 U.S.C. §§ 1681a(b) and (f), respectively.

### IV.   **FACTUAL ALLEGATIONS**

8.      The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

9.      In furtherance of that goal, the FCRA requires CRAs like Defendant to follow reasonable procedures to assure maximum possible accuracy of the information they report. *See* 15 U.S.C. § 1681e(b).

10.     For many years, Defendant has purchased public records information pertaining to residential eviction litigation ("eviction information") from one or more private vendors instead of retrieving the actual underlying court records themselves—or even more manageable digital representations—for the purpose of creating and selling consumer reports to third party landlords and rental property managers.

11.     The eviction information Defendant purchases is merely a summary prepared by their vendors that does not include all the information or the most up-to-date information available

at the courthouses or government offices where the records themselves are housed in conjunction with the day-to-day functioning of those entities.

12.     Defendant knows that its public records vendors make mistakes in the condensed, summary eviction information that it purchases for credit reporting purposes and that the information routinely does not include the most up-to-date status of the actual cases.

13.     Purchasing distilled, incomplete public records information was the impetus for regulatory investigations of the "Big Three" CRAs, TransUnion, LLC, Equifax Information Services, LLC, and Experian Information Solutions, Inc., and dozens of FCRA lawsuits throughout the United States.

14.     For example, in 2015, the Consumer Financial Protection Bureau ("CFPB") noted that CRAs did not adequately oversee their public records vendors:

> Examiners found that the oversight of public records providers by one or more CRAs was weak and required corrective action. For example, one or more CRAs had never conducted a formal audit of their public records providers. In addition, one or more CRAs did not have defined processes to verify the accuracy of public record information provided by their public records providers. In light of such weaknesses, Supervision directed one or more CRAs to establish and implement suitable and effective oversight of public records providers.[1]

15.     Further, the CFPB expressed concern about the accuracy of public records information that the CRAs imported into their consumer databases:

> Examiners reviewed quality control processes with respect to the accuracy of consumer reports produced by one or more CRAs and found that, with certain exceptions, there were no quality control policies and procedures to test compiled consumer reports for accuracy. While processes existed to analyze and improve the quality of incoming data, there was no post-compilation report review or sampling to test the accuracy of consumer reports. In light of these weaknesses, Supervision directed one or more CRAs to develop a plan with implementation timelines to

---

[1]     CONSUMER FINANCIAL PROTECTION BUREAU, *Supervisory Highlights: Summer 2015*, at § 2.1.1, available at http://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf.

3

establish quality controls that regularly assess the accuracy and integrity of the consumer reports and consumer file disclosures produced.[2]

16.     Other regulators, including the New York Attorney General, initiated investigations of the Big Three in part due to similar problems with the accuracy and currency of publics records information in credit reports.

17.     The Big Three ultimately entered into an agreement[3] with the New York Attorney General that they took to calling the "National Consumer Assistance Plan" ("NCAP").

18.     As of July 1, 2017, pursuant to the requirements of the settlement and the NCAP, the Big Three ceased including in credit reports civil judgment information that did not meet certain minimum standards. In practice, this meant that civil judgments disappeared entirely from consumer reports prepared by the Big Three.[4]

19.     Although the Big Three stepped back from using public records information in some of their consumer reporting products, other CRAs, like Defendant, continued to do so.

20.     At all times relevant to these allegations, Defendant was aware of the CFPB's and investigations of state attorneys general investigations into the Big Three's public records practices, the NCAP, the various public records class actions pending throughout the United States, and their obligations under the FCRA.

---

[2]     *Id.* at § 2.1.2.

[3]     *Settlement Agreement*, In the Matter of the Investigation by Eric T. Schneiderman, Attorney General of the State of New York, of Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union, LLC, available at http://www.ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf.

[4]     *See* CONSUMER FINANCIAL PROTECTION BUREAU, *Quarterly Consumer Credit Trends Report*, at 2-3 (February 2018), available at https://www.consumerfinance.gov/documents/6270/cfpb_consumer-credit-trends_public-records_022018.pdf.

21.     Moreover, Defendant, fully aware of the problems associated with the incomplete and inaccurate information purchased from vendors of such information, nevertheless continues to report eviction information to potential landlords via tenant screening reports.

22.     The data and tenant screening reports Defendant sells are used and expected to be used for multiple purposes governed by FCRA section 1681b and the information included in them bears on the credit history, credit worthiness, reputation, personal characteristics, and mode of living of each respective consumer. Thus, the tenant screening reports that Defendant sells to landlords and property managers about thousands of consumers each year are "consumer reports" within the meaning of FCRA section 1681a(d).

23.     Defendant does not maintain reasonable procedures designed to assure maximum possible accuracy of the eviction information in the reports it sells. Based upon established policy and practice, Defendant regularly reports inaccurate and out-of-date eviction information pertaining to eviction cases and judgments that have been dismissed, withdrawn, satisfied, or have resulted in a judgment for the tenant.

24.     Defendant's practices not only violate the FCRA as a matter of law, they exact serious consequences on rental housing applicants and interstate commerce, causing widespread harm to consumers.

25.     At all times relevant to Plaintiff's allegations, information pertaining to Landlord Tenant Complaints filed in the Philadelphia Municipal Court, including full case dockets and digital representations of all documents filed in such cases, including, but not limited to complaints, judgments, vacaturs, withdrawals, and satisfactions of judgment, were publicly available online for free from the Philadelphia Municipal Court Electronic Filing System.

26.     On or about July 27, 2017, Plaintiff applied to rent an apartment at Alden Park, an apartment complex in Philadelphia, Pennsylvania. An Alden Park representative obtained a "Yardi Resident Screening" report ("Yardi Report") about Plaintiff from Defendant for a fee.

27.     Upon information and belief, Defendant did not conduct any independent search of eviction court records, but rather purchased the data it included in the Yardi Report from a third-party vendor, namely, TransUnion, notwithstanding the fact that TransUnion itself had stopped reporting civil judgment information in the credit reports it prepares. *See* ¶ 19, *supra*.

28.     The Yardi Report included eleven inaccurate and out-of-date items of eviction information purportedly pertaining to Plaintiff under the heading "Premium National Civil Records Search."

29.     The first inaccurate and out-of-date item appeared, in relevant part, as follows:

```
PATRICIA MCINTYRE vs. BLDG PHILADELPHIA LP

COURT: PHILADELPHIA COUNTY MUNI COURT
FILE DATE: 01/18/2012
CASE NUMBER: 1201185230

DEFENDANT:
PATRICIA MCINTYRE
3902 CITY AVE #B1223
PHILADELPHIA, PA 19131

PLAINTIFF:
BLDG PHILADELPHIA LP

AMOUNT: 3,211.00
COMMENTS: Originating Court Department: CV; Filing Type: NEW
SUIT; Action Type: CIVIL NEW FILING; Assets: 0.00
```

30.     This information was inaccurate and out-of-date because the complaint filed against Plaintiff in case LT-12-01-18-5230 on January 18, 2012 was *withdrawn* on February 17, 2012, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

31.     The Yardi Report contained no reference to the February 17, 2012 withdrawal.

32.    Moreover, no judgment was entered on January 18, 2012 as the entry's reference to "Amount" indicated, let alone one for $3,211.00. Rather, a complaint was filed.

33.    As of the date of the Yardi Report, July 27, 2017, Defendant had failed to update the status of the January 18, 2012 filing for approximately five and a half years.

34.    The second inaccurate and out-of-date entry appeared, in relevant part, as follows:

```
------------------------------------------------------------------
PATRICIA MCINTYRE vs. KINSALE PARTNERS L P
------------------------------------------------------------------
COURT: PHILADELPHIA COUNTY MUNI COURT
FILE DATE: 04/27/2011
CASE NUMBER: 1104275672

DEFENDANT:
PATRICIA MCINTYRE
4401 CONSHOHOCKEN AVE #C3
PHILADELPHIA, PA 19131

PLAINTIFF:
KINSALE PARTNERS L P

AMOUNT: 1,058.00
COMMENTS: Originating Court Department: CV; Filing Type: NEW
SUIT; Action Type: CIVIL NEW FILING; Assets: 0.00
```

35.    This information was inaccurate and out-of-date because the complaint filed against Plaintiff on April 27, 2011 in case LT-11-04-27-5672 was reduced to a judgment on May 16, 2011 (*see* ¶ 45, *infra*), which judgment Plaintiff *satisfied* on August 3, 2011, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

36.    The Yardi Report contained no reference to the August 3, 2011 satisfaction.

37.    Moreover, no judgment was entered on April 27, 2011 as the entry's reference to "Amount" indicated, let alone one for $1,058.00. Rather, a complaint was filed.

38.    As of the date of the report, July 27, 2017, Defendant had failed to update the status of case LT-11-04-27-5672 for nearly six years.

39.     The third inaccurate and out-of-date entry appeared, in relevant part, as follows:

```
-----------------------------------------------------------------------------------
PATRICIA MCINTYRE vs. KINSALE PARTNERS L P
-----------------------------------------------------------------------------------
COURT: PHILADELPHIA COUNTY MUNI COURT
FILE DATE: 05/16/2011
CASE NUMBER: 1104275672

DEFENDANT:
PATRICIA MCINTYRE
4401 CONSHOHOCKEN AVE #C3
PHILADELPHIA, PA 19131

PLAINTIFF:
KINSALE PARTNERS L P

AMOUNT: 1,290.00
COMMENTS: Originating Court Department: CV; Filing Type: JUDGMENT
RELEASE; Action Type: CIVIL JUDGMENT; Assets: 0.00
```

40.     This information was inaccurate and out-of-date because no "judgment release" was filed in case LT-11-04-27-5672 on May 16, 2011, but rather a judgment, which Plaintiff *satisfied* on August 3, 2011, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

41.     The Yardi Report contained no reference to the August 3, 2011 satisfaction.

42.     As of the date of the report, July 27, 2017, Defendant had failed to update the status of case LT-11-04-27-5672 for nearly six years.

43.    The fourth inaccurate and out-of-date entry appeared, in relevant part, as follows:

```
-------------------------------------------------------------------------
PATRICIA MCINTYRE vs. KINSALE PARTNERS L P
-------------------------------------------------------------------------
COURT: PHILADELPHIA COUNTY MUNI COURT
FILE DATE: 05/16/2011
CASE NUMBER: 1104275672

DEFENDANT:
PATRICIA MCINTYRE
4401 CONSHOHOCKEN AVE #C3
PHILADELPHIA, PA 19131

PLAINTIFF:
KINSALE PARTNERS L P

AMOUNT: 1,290.00
COMMENTS: Originating Court Department: CV; Filing Type: CIVIL
JUDGMENT; Action Type: CIVIL JUDGMENT; Assets: 0.00
```

44.    This information was inaccurate and out-of-date because while a judgment was entered in case LT-11-04-27-5672 on May 16, 2011, Plaintiff *satisfied* that judgment on August 3, 2011, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

45.    The Yardi Report contained no reference to the August 3, 2011 satisfaction.

46.    As of the date of the report, July 27, 2017, Defendant had failed to update the status of case LT-11-04-27-5672 for nearly six years.

47.    The fifth inaccurate and out-of-date item appeared, in relevant part, as follows:

```
------------------------------------------------------------------------
PATRICIA MCINTYRE vs. BLDG PHILADELPHIA LP
------------------------------------------------------------------------
COURT: PHILADELPHIA COUNTY MUNI COURT
FILE DATE: 10/05/2012
CASE NUMBER: 1210053884

DEFENDANT:
PATRICIA MCINTYRE
3902 CITY AVE #B1223
PHILADELPHIA, PA 19131

PLAINTIFF:
BLDG PHILADELPHIA LP

AMOUNT: 3,712.00
COMMENTS: Originating Court Department: CV; Filing Type: NEW
SUIT; Action Type: CIVIL NEW FILING; Assets: 0.00
```

48.    This information was inaccurate and out-of-date because the complaint filed against

Plaintiff in case LT-12-10-05-3884 on October 5, 2012 was a nullity, having merged with the

judgment entered in that case on November 6, 2012 (*see* ¶ 71, *infra*), which Plaintiff *satisfied* on

May 14, 2015 (*see* ¶ 66, *infra*).

49.    Moreover, no judgment was entered on October 5, 2012 as the entry's reference to

"Amount" indicated. Rather, a complaint was filed.

50.    As of the date of the Yardi Report, July 27, 2017, Defendant had failed to update

the status of LT-12-10-05-3884 for more than two years.

51.     The sixth inaccurate and out-of-date entry appeared, in relevant part, as follows:

```
--------------------------------------------------------------------------------
PATRICIA MCINTYRE vs. KINSALE PARTNERS LP
--------------------------------------------------------------------------------
COURT: PHILADELPHIA COUNTY MUNI COURT
FILE DATE: 10/08/2010
CASE NUMBER: 1010084331

DEFENDANT:
PATRICIA MCINTYRE
4401 CONSHOHOCKEN AVE #C3
PHILADELPHIA, PA 19131

PLAINTIFF:
KINSALE PARTNERS LP

AMOUNT: 1,791.00
COMMENTS: Originating Court Department: CV; Filing Type: NEW
SUIT; Action Type: CIVIL NEW FILING; Assets: 0.00
```

52.     This information was inaccurate and out-of-date because the complaint filed against Plaintiff in case LT-10-10-08-4331 on October 8, 2010 was a nullity, having merged with the judgment entered in that case on November 5, 2010 (*see* ¶ 58, *infra*), which Plaintiff *satisfied* on April 6, 2011.

53.     The Yardi Report contained no reference to the April 6, 2011 satisfaction.

54.     Moreover, no judgment was entered on October 8, 2010 as the entry's reference to "Amount" indicated. Rather, a complaint was filed.

55.     As of the date of the report, July 27, 2017, Defendant had failed to update the status of case LT-10-10-08-4331 for more than six years.

56.     The seventh inaccurate and out-of-date entry appeared, in relevant part, as follows:

```
--------------------------------------------------------------------------------
PATRICIA MCINTYRE vs. KINSALE PARTNERS LP
--------------------------------------------------------------------------------
COURT: PHILADELPHIA COUNTY MUNI COURT
FILE DATE: 11/05/2010
CASE NUMBER: 1010084331

DEFENDANT:
PATRICIA MCINTYRE
4401 CONSHOHOCKEN AVE #C3
PHILADELPHIA, PA 19131

PLAINTIFF:
KINSALE PARTNERS LP

AMOUNT: 2,396.00
COMMENTS: Originating Court Department: CV; Filing Type: CIVIL
JUDGMENT; Action Type: CIVIL JUDGMENT; Assets: 0.00
```

57.     This information was inaccurate and out-of-date because Plaintiff *satisfied* the

judgment entered in that case on November 5, 2010 on April 6, 2011, when an entry reflecting that

updated disposition was filed on the publicly-available case docket.

58.     The Yardi Report contained no reference to the April 6, 2011 satisfaction.

59.     The eighth inaccurate and out-of-date entry appeared, in relevant part, as follows:

```
--------------------------------------------------------------------------------
PATRICIA MCINTYRE vs. KINSALE PARTNERS LP
--------------------------------------------------------------------------------
COURT: PHILADELPHIA COUNTY MUNI COURT
FILE DATE: 11/05/2010
CASE NUMBER: 1010084331

DEFENDANT:
PATRICIA MCINTYRE
4401 CONSHOHOCKEN AVE #C3
PHILADELPHIA, PA 19131

PLAINTIFF:
KINSALE PARTNERS LP

AMOUNT: 2,396.00
COMMENTS: Originating Court Department: CV; Filing Type: JUDGMENT
RELEASE; Action Type: CIVIL JUDGMENT; Release Date: 04/06/2011;
Assets: 0.00
```

60.     This information was inaccurate and out-of-date because no "Judgment Release"

was filed on November 5, 2010 in case LT-10-10-08-4331. Rather, a judgment was entered (*see*

¶ 57, *supra*).

61.     Plaintiff *satisfied* the November 5, 2010 judgment on April 6, 2011, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

62.     The Yardi Report contained no reference to the April 6, 2011 satisfaction.

63.     As of the date of the report, July 27, 2017, Defendant had failed to update the status of case LT-10-10-08-4331 for more than six years.

64.     The ninth inaccurate and out-of-date item appeared, in relevant part, as follows:

```
PATRICIA MCINTYRE vs. BLDG PHILADELPHIA LP

COURT: PHILADELPHIA COUNTY MUNI COURT
FILE DATE: 11/06/2012
CASE NUMBER: 1210053884

DEFENDANT:
PATRICIA MCINTYRE
3902 CITY AVE #B1223
PHILADELPHIA, PA 19131

PLAINTIFF:
BLDG PHILADELPHIA LP

AMOUNT: 5,728.00
COMMENTS: Originating Court Department: CV; Filing Type: JUDGMENT
RELEASE; Action Type: CIVIL JUDGMENT; Release Date: 05/14/2015;
Assets: 0.00
```

65.     This information was inaccurate and out-of-date because no "Judgment Release" was filed on November 6, 2012 in case LT-12-10-05-3884, but rather a judgment was entered (*see* ¶ 70, *infra*), which Plaintiff *satisfied* on May 14, 2015, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

66.     The Yardi Report contained no reference to the May 14, 2015 satisfaction.

67.     Moreover, the entry contradicted itself, indicating both an "Amount" due and simultaneously a release.

68.     As of the date of the Yardi Report, July 27, 2017, Defendant had failed to update the status of LT-12-10-05-3884 for more than two years.

69.     The tenth inaccurate and out-of-date item appeared, in relevant part, as follows:

```
----------------------------------------------------------------------
PATRICIA MCINTYRE vs. BLDG PHILADELPHIA LP
----------------------------------------------------------------------
COURT: PHILADELPHIA COUNTY MUNI COURT
FILE DATE: 11/06/2012
CASE NUMBER: 1210053884

DEFENDANT:
PATRICIA MCINTYRE
3902 CITY AVE #B1223
PHILADELPHIA, PA 19131

PLAINTIFF:
BLDG PHILADELPHIA LP

AMOUNT: 5,728.00
COMMENTS: Originating Court Department: CV; Filing Type: CIVIL
JUDGMENT; Action Type: CIVIL JUDGMENT; Assets: 0.00
```

70.     This information was inaccurate and out-of-date because Plaintiff *satisfied* the

November 6, 2012 judgment in case LT-12-10-05-3884 on May 14, 2015, when an entry reflecting

that updated disposition was filed on the publicly-available case docket.

71.     As of the date of the Yardi Report, July 27, 2017, Defendant had failed to update

the status of LT-12-10-05-3884 for more than two years.

72.     The eleventh inaccurate and out-of-date item appeared, in relevant part, as follows:

```
----------------------------------------------------------------------
PATRICIA MCINTYRE vs. DUFFIELD HOUSE ASSOC
----------------------------------------------------------------------
COURT: PHILADELPHIA COUNTY MUNI COURT
FILE DATE: 12/06/2016
CASE NUMBER: 1612063568

DEFENDANT:
PATRICIA MCINTYRE
3701 CONSHOHOCKEN AV #31 921
PHILADELPHIA, PA 19131

PLAINTIFF:
DUFFIELD HOUSE ASSOC

AMOUNT: 1,366.00
COMMENTS: Originating Court Department: CV; Filing Type: NEW
SUIT; Action Type: CIVIL NEW FILING; Assets: 0.00
```

73.     This information was inaccurate and out-of-date because the complaint filed against

Plaintiff in case LT-16-12-06-3568 on December 6, 2016 was a nullity, having merged with the

judgment entered in that case on February 15, 2017, which judgment was *vacated* on May 18, 2017, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

74.     Moreover, no judgment was entered against Plaintiff on December 6, 2016 as the entry's reference to "Amount" indicated, let alone one for $1,366.00. Rather a complaint was filed.

75.     As of the date of the Yardi Report, July 27, 2017, Defendant had failed to update the status of LT-16-12-06-3568 for more than four months.

76.     Forced to vacate her previous apartment because of mold and unable to secure rental housing because of Defendant's inaccurate and out-of-date tenant screening report, Plaintiff has been forced to live in expensive extended-stay housing for many months.

77.     At all times pertinent hereto, Defendant's conduct was a result of deliberate policies and practices, was willful, and carried out in reckless disregard for a consumers' rights as set forth under section 1681e(b) of the FCRA, and further assumed an unjustifiably high risk of harm.

## V.     CLASS ACTION ALLEGATIONS

78.     Plaintiff brings this action on behalf of the following Classes for Defendant's violations of FCRA section 1681e(b):

### *Failure to Update Class – Nationwide*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were subjects of tenant screening reports created by Defendant that contained eviction information, but which failed to state that the action had been withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant according to court records dated at least 30 days prior to the date of the report.

*Failure to Update Subclass I: Commonwealth of Pennsylvania*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were subjects of tenant screening reports created by Defendant that contained information pertaining to a landlord tenant action filed within the Commonwealth of Pennsylvania, but which failed to state that the action had been withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant according to court records dated at least 30 days prior to the date of the report.

*Failure to Update Subclass II: Philadelphia*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were subjects of tenant screening reports created by Defendant that contained information pertaining to a landlord tenant action filed in the Philadelphia, Pennsylvania Municipal Court but which failed to state that the action had been withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant according to court records dated at least 30 days prior to the date of the report.

79.     The members of the Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the members of the Classes number in the thousands. Defendant sells eviction information to thousands of businesses throughout the country, and its tenant screening reports are standardized, form documents, produced pursuant to uniform practices and procedures.

80.     There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal question concerns whether Defendant willfully and/or negligently violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumers' reports with respect to eviction cases that had been withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant at least 30 days prior.

81.     Plaintiff's claims are typical of the claims of the members of the Classes, which all arise from the same operative facts and are based on the same legal theories.

82.     Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling consumer class actions. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this claim.

83.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

84.     Whether Defendant violated the FCRA can be determined by examination of Defendant's policies and conduct and a ministerial inspection of Defendant's business records and publicly available eviction litigation records.

85.     A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the members of the Classes may be derived from Defendant's records.

## VI.   CLAIM *for* RELIEF

### COUNT I – VIOLATION *of* FCRA SECTION 1681e(b)

86.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

87.   Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable to the Plaintiff and the Failure to Update Classes for negligently and willfully failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates, in violation of section 1681e(b). Specifically, Defendant failed to follow reasonable procedures to assure maximum accuracy of eviction information contained in tenant screening reports prepared about Plaintiff and members of the Failure to Update Classes, thereby publishing inaccurate and outdated eviction information to their potential landlords and property managers.

### VII.   PRAYER *for* RELIEF

WHEREFORE, Plaintiff prays this Honorable Court enter an order granting the following relief:

A.   certifying the proposed Classes under Federal Rule of Procedure 23 and appointing Plaintiff and her counsel to represent the Classes;

B.   declaring that Defendant's conduct as alleged is in violation of the FCRA;

C.   awarding actual damages pursuant to 15 U.S.C. § 1681o(a);

D.   awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member pursuant to 15 U.S.C. § 1681n(a);

E.   awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

F.    awarding costs and reasonable attorney's fees pursuant to 15 U.S.C.

§§ 1681n and 1681o;

G.    and granting such other and further relief as may be just and proper.

## VIII.   JURY TRIAL DEMAND

88.    Plaintiff demands trial by jury on all issues so triable.

Dated: October 12, 2018                          Respectfully submitted,

                                                 **PATRICIA MCINTYRE**, by her attorneys,

                                       By:       */s/*Christopher M. Lefebvre
                                                 Christopher M. Lefebvre BBO#629056
                                                 Two Dexter Street
                                                 Pawtucket, RI 02862
                                                 Tel: (401) 728-6060
                                                 Fax: (401) 728-6534

                                                 James A. Francis
                                                 John Soumilas
                                                 **FRANCIS & MAILMAN, P.C.**
                                                 Land Title Building, 19th Floor
                                                 1600 Market Street, 25th Floor
                                                 Philadelphia, PA 19103
                                                 Tel: (215) 735-8600
                                                 Fax: (215) 940-8000
                                                 jfrancis@consumerlawfirm.com
                                                 jsoumilas@consumerlawfirm.com