# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PATRICIA MCINTYRE, *on behalf of herself and all others similarly situated*, | * | Civil Action No. 18-cv-12141-ADB |
| | * | |
| | * | |
| Plaintiff, | * | **LEAVE TO FILE EXCESS PAGES** |
| | * | **GRANTED ON DEC. 3, 2020** |
| v. | * | **(ECF NO. 105)** |
| | * | |
| RENTGROW, INC., d/b/a/ YARDI RESIDENT SCREENING, | * | **LEAVE TO FILE UNDER SEAL** |
| | * | **GRANTED ON OCT. 7, 2020** |
| Defendant. | * | **(ECF NO. 87)** |

## RENTGROW'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

Page

ARGUMENT ................................................................................................. 1

I.    PLAINTIFF HAS NO EVIDENCE OF ANY INACCURACY IN HER REPORT ............. 1

    A.    The Court Can Ignore Groundless Assertions Not Even Made in the Complaint. ...... 2

    B.    Nakedly Repeating the Complaint's Allegations Cannot Defeat Summary Judgment. .......................................................................................... 3

    C.    There Is No Factual Basis for Calling the Report Misleading. .................................. 6

II.    PLAINTIFF MISSTATES THE ARTICLE III STANDING REQUIREMENTS, AND DOES NOT SATISFY THEM ................................................................. 7

III.    RENTGROW'S PROCEDURES WERE INDISPUTABLY REASONABLE .................... 9

IV.    THERE IS NO EVIDENCE OF WILLFUL NONCOMPLIANCE ................................... 13

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Anderson v. Trans Union, LLC*,
345 F. Supp. 2d 963 (W.D. Wis. 2004) ...............................................................15

*Batterman v. BR Carroll Glenridge, LLC*,
2020 WL 1821322 (N.D. Ga. Apr. 10, 2020),
*aff'd*, 2020 WL 5943872 (11th Cir. Oct. 7, 2020) ................................................7

*Berkery v. Equifax Info. Servs. LLC*,
2019 WL 1958567 (E.D. Pa. May 2, 2019) ..........................................................7

*Cahlin v. GMAC*,
936 F.2d 1151 (11th Cir. 1991) .........................................................................6, 8

*Calvi v. Knox Cnty.*,
470 F.3d 422 (1st Cir. 2006) ..............................................................................2, 8

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) .................................................................................7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................................... *passim*

*Childress v. Experian Info. Sols., Inc.*,
790 F.3d 745 (7th Cir. 2015) ...............................................................................12

*Clark v. Trans Union, LLC*,
2019 WL 3505446 (N.D. Ga. June 5, 2019) ..........................................................3

*Cortez v. Trans Union, LLC*,
617 F.3d 688 (3d Cir. 2010)..................................................................................14

*Cushman v. Trans Union Corp.*,
115 F.3d 220 (3d Cir. 1997)..................................................................................14

*Dalton v. Capital Assoc. Indus.*,
257 F.3d 409 (4th Cir. 2001) ................................................................................15

*DeAndrade v. Trans Union LLC*,
523 F.3d 61 (1st Cir. 2008)....................................................................................6

*Denan v. Trans Union LLC*,
959 F.3d 290 (7th Cir. 2020) .................................................................................6

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
   895 F.3d 1166 (9th Cir. 2018) ...........................................................................7

*Fitzgerald v. Chrysler Corp.*,
   116 F.3d 225 (7th Cir. 1997) ............................................................................13

*Florence v. Experian Info. Sols., Inc.*,
   775 F. App'x 308 (9th Cir. 2019) ......................................................................6

*Fuges v. S.W. Fin. Servs., Ltd.*,
   707 F.3d 241 (3d Cir. 2012)..........................................................................5, 15

*Gorman v. Wolpoff & Abrahamson, LLP*,
   584 F.3d 1147 (9th Cir. 2009) ...........................................................................8

*Hawkins v. S2Verify LLC*,
   2016 WL 107197 (N.D. Cal. Jan. 11, 2016) ......................................................5

*Henson v. CSC Credit Servs.*,
   29 F.3d 280 (7th Cir. 1994) ..............................................................11, 13, 14

*Kenn v. Eascare, LLC*,
   2020 WL 5217117 (D. Mass. Sept. 1, 2020) .....................................................7

*Kruse v. Experian Info. Sols., Inc.*,
   471 F. App'x 714 (9th Cir. 2012) ......................................................................6

*Ku v. Trans Union, LLC*,
   2020 WL 806626 (D. Nev. Feb. 18, 2020) ........................................................7

*LeBoon v. Equifax Info. Servs., LLC*,
   2020 WL 610450 (E.D. Pa. Feb. 7, 2020) .........................................................7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).......................................................................................7, 8

*McCann v. Careerbuilding Empl. Screening, LLC*,
   2018 WL 3978994 (W.D. Mo. Aug. 20, 2018).......................................10, 12, 13

*Medina-Rivera v. MVM, Inc.*,
   713 F.3d 132 (1st Cir. 2013)..............................................................................3

*Meeks v. Equifax Info. Servs., LLC*,
   2019 WL 1856411 (N.D. Ga. Mar. 4, 2019).......................................................7

*Murray v. Indymac Bank FSB*,
   2007 WL 2741650 (N.D. Ill. Sept. 13, 2007) ..................................................15

*Nelson v. Nationstar Mortg., LLC*,
  2020 WL 7029896 (S.D. Ala. Nov. 30, 2020) ..........................................................9

*Norfolk & W. R.R. Co. v. Wasserstrom*,
  1991 WL 270076 (E.D. Pa. Dec. 12, 1991) ..............................................................3

*O'Brien v. Equifax Info. Servs., LLC*,
  382 F. Supp. 2d 733 (E.D. Pa. 2005) ......................................................................12

*O'Connor v. Trans Union Corp.*,
  1999 WL 773504 (E.D. Pa. Sept. 28, 1999) ............................................................15

*Perry v. Toyota Motor Credit Corp.*,
  2019 WL 332813 (W.D. Va. Jan. 25, 2019) ..............................................................7

*Philbin v. Trans Union Corp.*,
  101 F.3d 957 (3d Cir. 1996) ............................................................................14, 15

*Ramirez v. Trans Union, LLC*,
  380 F.3d 1008 (9th Cir. 2020) ................................................................................14

*Ray v. Samsung Elecs. Am., Inc.*,
  2016 WL 3406127 (S.D.N.Y. June 17, 2016) ..........................................................12

*Rydholm v. Equifax Info. Servs., LLC*,
  2020 WL 6278969 (D. Minn. Oct. 23, 2020) ..........................................................10

*Rynders v. E.I. DuPont, de Nemours & Co.*,
  21 F.3d 835 (8th Cir. 1994) ....................................................................................12

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007) ............................................................................................13–15

*Serfess v. Equifax Credit Info. Servs., LLC*,
  2016 U.S. Dist. LEXIS 112663 (D.N.J. Aug. 24, 2016) ...........................................6

*Shaw v. Experian Info. Sols., Inc.*,
  891 F.3d 749 (9th Cir. 2018) ....................................................................................6

*Shimon v. Equifax Info. Servs. LLC*,
  431 F. Supp. 3d 115 (E.D.N.Y. 2020) ..................................................................5, 7

*Smith v. LexisNexis Screening Sols., Inc.*,
  837 F.3d 604 (6th Cir. 2016) ..................................................................................15

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ..........................................................................................7–9

*Stewart v. Credit Bur., Inc.*,
  734 F.2d 47 (D.C. Cir. 1984) ..................................................................................11

*Thompson v. Equifax Info. Servs., LLC*,
  441 F. Supp. 3d 533 (E.D. Mich. 2020) ....................................................................7

*Waletzko v. Corelogic Credco, LLC*,
  2016 WL 5879597 (W.D. Wis. Oct. 7, 2016) ..........................................................15

*Wenning v. On-Site Mgr., Inc.*,
  2016 WL 3538379 (S.D.N.Y. June 22, 2016) ..........................................................15

*Whelan v. Trans Union Cred. Rep. Agency*,
  862 F. Supp. 824 (E.D.N.Y. 1994) ..........................................................................15

*White v. BCBS of Mass.*,
  442 Mass. 64 (2004) ...................................................................................................8

*Zemelka v. Trans Union LLC*,
  2019 WL 2327813 (D. Ariz. May 31, 2019) ..............................................................7

**Statutes & Rules**

15 U.S.C. § 1681 ................................................................................................................13

15 U.S.C. § 1681a .......................................................................................................10, 12

FED. R. CIV. P. 37 ..............................................................................................................11

FED. R. CIV. P. 56 ................................................................................................................1

L.R., D. MASS 56.1 ..............................................................................................................3

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2019) .....................................................................3

Plaintiff's Opposition ("Opp.," ECF No. 99) to RentGrow's Motion for Summary Judgment ("Mot.," ECF No. 90) identifies no evidence countering RentGrow's showing that it accurately reported facts about five eviction lawsuits against Plaintiff, using procedures expressly permitted by FCRA, causing Plaintiff no harm. The extent to which Plaintiff's opposition merely echoes allegations from her Complaint that RentGrow already showed false and groundless confirms not only that her claims lack merit, but also her failure to carry the burdens Rule 56(e) places on a party opposing summary judgment. For example, RentGrow has carried its own burden by supporting its motion with excerpts pasted directly from its report showing how Plaintiff's claims of inaccuracy are unfounded and misleading, and Plaintiff's opposition makes no attempt to grapple with any part of RentGrow's showing. Meanwhile, Plaintiff's accompanying Response to RentGrow's Statement of Undisputed Facts leaves all the facts RentGrow submitted about its report expressly undisputed, and therefore admitted. *See* ECF No. 100. Rhetorical arguments in a brief are not a substitute for material factual disputes. Plaintiff fails to carry her burden to "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## ARGUMENT

### I.

### PLAINTIFF HAS NO EVIDENCE OF ANY INACCURACY IN HER REPORT.

Plaintiff complains about RentGrow's indisputably accurate disclosures of eleven court filings and dispositions among the numerous lawsuits she has faced over her chronic failures to pay her rent. She has a variety of different theories as to why each was supposedly "inaccurate" or "out-of-date." Compl. ¶ 28. RentGrow's motion for summary judgment shows why each theory not only fails as a matter of law and undisputed fact, but appears to rest on a hope that the Court will take the most brazen mischaracterizations of the report at face value and not bother reading it.

For example, Plaintiff repeatedly calls RentGrow's report on one or another court filing "out-of-date" for failing to mention a subsequent filing, when the subsequent filing is reported right after the one Plaintiff complains about. *See* Mot. at 17–19. Or Plaintiff will claim that RentGrow made some factual assertion it never made, and which the Court can confirm RentGrow never made merely by looking at the language in the report. *See* Mot. at 14–15. Plaintiff's opposition brief refuses to engage with (much less counter) any of these showings.

**A.    The Court Can Ignore Groundless Assertions Not Even Made in the Complaint.**

Plaintiff opens her brief saying this case turns on the "straightforward" issue of whether RentGrow's report "indicated she owed money to past landlords." Opp. at 1. If so, the Court need not hesitate to enter summary judgment in RentGrow's favor. The Court can scour the report and find nothing implying Plaintiff still owed money to past landlords. RentGrow reported undisputed facts about her litigation *history*—that she had been sued multiple times over her failures to pay her rent, had final judgments entered against her in three of those suits, and had gotten all three judgments released. No claims that any debt was still owing were made or implied. Plaintiff knows this, which is why her complaint never even alleged she was falsely portrayed as still owing money. The claim comes for the first time in her opposition brief and can thus be ignored. *See Calvi v. Knox Cnty.*, 470 F.3d 422, 431 (1st Cir. 2006) (plaintiff "not entitled to raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment").

The same thing applies to her assertion that RentGrow "suggested" she had "been party to 11 eviction lawsuits." Opp. at 2. The report suggested no such thing, not even obliquely, and Plaintiff never claimed it did until her recent motion for class certification. ECF No. 93 at 8. The easily verifiable and incontestable fact is that RentGrow reported *five* complaints in *five* eviction lawsuits. ECF No. 90-9 at 6-10. The number 11 comes from the fact that it showed three of those five cases reaching final judgment and all three judgments released, for a total of eleven *filings*,

not eleven lawsuits. The Court need not "accept a party's version of the facts when it is 'blatantly contradicted by the record.'" *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139–40 (1st Cir. 2013).

**B.      Nakedly Repeating the Complaint's Allegations Cannot Defeat Summary Judgment.**

Most of Plaintiff's arguments read more like a retread of her complaint than an opposition to a summary-judgment motion, as they consist of naked allegations with no attempt to explain how the record evidence supports them and no engagement with RentGrow's opening arguments. She starts off claiming RentGrow "failed to note that the [*Kinsale I*] judgment had been satisfied and paid in full as of April 6, 2011." Opp. at 10. There was no such failure. As RentGrow has already shown (Mot. at 18), RentGrow disclosed the April 6, 2011 judgment release:

```
COMMENTS: Originating Court Department: CV; Filing Type: JUDGMENT RELEASE;
Action Type: CIVIL JUDGMENT; Release Date: 04/06/2011; Assets:  0.00
```

ECF No. 90-9 at 9. The same applies to *Kinsale II*'s August 3, 2011 judgment release and *BLDG II*'s May 14, 2015 judgment release, both disclosed despite Plaintiff's bald insistence otherwise. *See* Mot. at 18–19. Plaintiff "does not dispute" that RentGrow disclosed these releases, nor could she. ECF No. 100 ¶¶ 15, 21, 29. The fact is thus "deemed … admitted." L.R., D. MASS 56.1.

Reporting a judgment release is the same thing as reporting the judgment satisfied, as RentGrow pointed out in its opening brief (Mot. at 19) and Plaintiff makes no effort to counter. *See*, *e.g.*, *Norfolk & W. R.R. Co. v. Wasserstrom*, 1991 WL 270076, at *2 (E.D. Pa. Dec. 12, 1991) ("effect" of a "release [is] to satisfy the judgment"); BLACK'S LAW DICTIONARY (11th ed. 2019) ("release, n. 1. Liberation from an obligation, duty, or demand … 2. The relinquishment … of a … claim … 3. A written discharge …"). Plaintiff can get nowhere insisting that some inaccuracy lies in using the word "release" instead of the word "satisfied" to convey the same thing. *Cf. Clark v. Trans Union, LLC*, 2019 WL 3505446, at *4 (N.D. Ga. June 5, 2019) (description of "discharged accounts as 'included in bankruptcy' was not inaccurate or misleading" because "a potential

creditor would understand that the account was discharged in bankruptcy despite the fact that the term 'discharged' was not specifically utilized").

After (falsely) denying that RentGrow disclosed the releases, Plaintiff argues that the releases somehow made it inappropriate to report on the "Amount" sought in the complaints and awarded in the judgments in RentGrow's respective reports on those filings. *See* Opp. at 10–11. But Plaintiff never articulates why. She does not and cannot argue that RentGrow reported the amounts incorrectly. Kinsale sought $1,791.50 in unpaid rent in its complaint:

### Summarize amounts due below:

| Total Rent | $ | 1791.50 |
| --- | --- | --- |

ECF No. 90-10 at 2. And RentGrow reported that as the amount sought in the complaint:

```
AMOUNT: 1,791.00
COMMENTS: Originating Court Department: CV; Filing Type: NEW SUIT; Action
Type: CIVIL NEW FILING; Assets: 0.00
```

ECF No. 90-9 at 8. Likewise, Kinsale obtained a $2,396.50 monetary judgment against McIntyre:

### JUDGMENT BY AGREEMENT
#### (Judgments by Agreement are not appealable)

[x] Judgment for the Plaintiff for the Amount of:     2291.50 Plus Costs:     105.00 For a Total of:     2396.50

ECF No. 90-11 at 2. And that is the amount of the judgment RentGrow reported:

```
AMOUNT: 2,396.00
COMMENTS: Originating Court Department: CV; Filing Type: CIVIL JUDGMENT;
Action Type: CIVIL JUDGMENT; Assets: 0.00
```

ECF No. 90-9 at 8 (The report did round both down to the nearest dollar, in McIntyre's favor.)

Notably, despite alleging in her Complaint that each "entry's reference to 'Amount'" falsely implied a "judgment" was entered on the dates the complaints were filed (Compl. ¶¶ 32, 37, 49, 54), Plaintiff's response to RentGrow's Statement of Undisputed Facts "does not dispute" that each reference to a complaint accurately disclosed the "amount" sought in the complaint, and each reference to a judgment accurately disclosed the "amount" of the judgment. ECF No. 100

¶¶ 10–13, 16–19, 22–23, 24–27, 30–31. Having abandoned her original theory, Plaintiff pursues a new theory that disclosing these "Amounts" somehow implied they were still "owing." Opp. at 11. No such thing was implied. In each case, McIntyre was sued for a certain amount, then had judgments of certain amounts entered against her. Ample case law cited in RentGrow's opening brief establishes that information is "part of [her] history" and "undoubtedly important information for creditors to have." *Fuges v. S.W. Fin. Servs., Ltd.*, 707 F.3d 241, 244 (3d Cir. 2012); *Shimon v. Equifax Info. Servs. LLC*, 431 F. Supp. 3d 115, 121 (E.D.N.Y. 2020); *see* Mot. at 16–17 nn.11–12 (collecting cases). Plaintiff cites no case law to the contrary.[1]

Lastly, Plaintiff claims a "disparit[y] between the publicly available court records" and RentGrow's report because the "report contained no reference to the May 18, 2017 Order vacating the February 15, 2017 judgment or the July 17, 2017 Rule vacating the May 18, 2017 Order" in *Duffield House*. Opp. at 11. Plaintiff neglects to mention that the *reason* RentGrow didn't report on orders vacating those judgments was because it didn't report on the vacated judgments in the first place, which is entirely appropriate and exactly how Plaintiff alleges a vacated judgment *should* be handled. *See, e.g., Shimon*, 431 F. Supp. 3d at 121 (judgment should be "removed from the report" if there is "a vacatur"); Compl. ¶ 2 (alleging that vacated judgments should not be reported). The only thing RentGrow reported on the *Duffield House* case was the complaint. ECF No. 90-9 at 9-10. That accurately described the status of the case as of the date of the report, when the "publicly available court records" (Opp. at 2, 6, 10) reflected that the case was still pending. It would not be withdrawn until the day after RentGrow's report. *See* ECF No. 93-9 at 27, 38–39.

---

[1] Plaintiff's sole legal citation is to *Hawkins v. S2Verify LLC*, 2016 WL 107197, at *2 (N.D. Cal. Jan. 11, 2016), for the inapt proposition that the "inclusion of several duplicates of the same [record] on plaintiff's report" is actionable. Opp. at 11 n.9. There are no such "duplicates" in RentGrow's report. RentGrow's report contained eleven unique entries on eleven unique filings. It is not comparable to a report with "duplicate" entries implying the subject had more criminal convictions than he actually did, which was the situation in *Hawkins*. 2016 WL 107197, at *1–2.

**C.      There Is No Factual Basis for Calling the Report Misleading.**

Plaintiff calls the report "patent[ly]" inaccurate and thus says "the question of whether a user of the report can be objectively mislead [*sic*] is not at issue." Opp. at 10 n.8. Two pages later, she falls back on calling the report "*misleading*" even if "technically accurate." Opp. at 12. But Plaintiff conspicuously fails to say what it is a reader of the report could have been misled *about*.

Instead, she claims that if the report "had to be" updated, then it was necessarily "inaccurate or incomplete." Opp. at 13. This doesn't speak to the argument Plaintiff was ostensibly making about how the report might be misleading *despite* technical accuracy, and it isn't even true. The mere fact that the report was updated is not evidence it was inaccurate or that it was updated because it "had to be." *See, e.g.*, *Serfess v. Equifax Credit Info. Servs., LLC*, 2016 U.S. Dist. LEXIS 112663, at *10–12 (D.N.J. Aug. 24, 2016) ("changed [] reporting" stating that the account was paid is not "evidence . . . that [the] previous reports . . . were inaccurate, or that [the furnisher] modified the report for any reason other than 'internal business purposes'"). And just because TU BDS used the phrase "inaccurate and incomplete" in its boilerplate form letter for dispute correspondence does not mean that the report was either one of those things. Accuracy "is an objective measure." *Cahlin v. GMAC*, 936 F.2d 1151, 1158 (11th Cir. 1991). It turns on what was in the report, not on TU BDS's subjective characterizations of the report.

Absent "specific facts" a jury could rely on to find the report misleading, Plaintiff's insistence that "accuracy is a question for the jury" in the "majority" of cases (Opp. at 8) gets her nowhere. It doesn't even have empirical support. RentGrow has cited far more cases deciding accuracy at the summary judgment or dismissal stage than Plaintiff has cases declining to do so.[2]

---

[2] *E.g.*, *DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008); *Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020); *Florence v. Experian Info. Sols., Inc.*, 775 F. App'x 308 (9th Cir. 2019); *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749 (9th Cir. 2018); *Kruse v. Experian Info.*

## II.

## PLAINTIFF MISSTATES THE ARTICLE III STANDING REQUIREMENTS, AND DOES NOT SATISFY THEM.

Plaintiff lacks a concrete injury for a basic reason amply evidenced by her own allegations and testimony: all her claimed harms stem from her failure to qualify for the apartment rental, but that failure had no causal link to any alleged inaccuracy in RentGrow's report. *See* Mot. at 8–13. Alden Park required an unblemished history for its luxury rentals; Plaintiff didn't have that. *See id*. at 5–7. Thus there is no "causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see* Mot. at 9–10 (collecting cases, *e.g.*, *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1176 (9th Cir. 2018) (alleged inaccuracies cannot "establish a concrete injury" where plaintiff was "disqualified" anyway)).

Plaintiff makes no attempt to dispute any of these facts, nor could she. Instead, she tries to argue that she doesn't need to evidence anything more for Article III standing beyond saying that "false information" was disseminated "about her" and that "Congress enacted the FCRA to 'curb the dissemination of false information.'" Opp. at 5–6. She is wrong on the law. "[N]ot all inaccuracies cause harm." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). And "[a] plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a right and purports to authorize a suit to vindicate it." *Kenn v. Eascare, LLC*, 2020 WL 5217117, at *3 (D. Mass. Sept. 1, 2020) (Burroughs, J.) (quoting *Spokeo*, 136 S. Ct. at 1543). So Plaintiff needs

_____

*Sols., Inc.*, 471 F. App'x 714 (9th Cir. 2012); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. 2010); *Thompson v. Equifax Info. Servs., LLC*, 441 F. Supp. 3d 533 (E.D. Mich. 2020); *Shimon*, *supra*; *Batterman v. BR Carroll Glenridge, LLC*, 2020 WL 1821322 (N.D. Ga. Apr. 10, 2020), *aff'd*, 2020 WL 5943872 (11th Cir. Oct. 7, 2020); *Ku v. Trans Union, LLC*, 2020 WL 806626 (D. Nev. Feb. 18, 2020); *LeBoon v. Equifax Info. Servs., LLC*, 2020 WL 610450 (E.D. Pa. Feb. 7, 2020); *Zemelka v. Trans Union LLC*, 2019 WL 2327813 (D. Ariz. May 31, 2019); *Berkery v. Equifax Info. Servs. LLC*, 2019 WL 1958567 (E.D. Pa. May 2, 2019); *Meeks v. Equifax Info. Servs., LLC*, 2019 WL 1856411 (N.D. Ga. Mar. 4, 2019); *Perry v. Toyota Motor Credit Corp.*, 2019 WL 332813 (W.D. Va. Jan. 25, 2019).

something more than a claim of false information to evidence a concrete harm.

Plaintiff argues otherwise by calling her asserted injury "akin to the common law tort of defamation." Opp. at 5. This is another "new and unadvertised theor[y] of liability" improperly raised for the first time in her summary-judgment opposition. *Calvi*, *supra*. Plaintiff's complaint never alleged being defamed, nor did she claim to have suffered defamation when she answered interrogatories requiring her to "state each item of harm, damage, loss or injury" she claims to have suffered. ECF No. 90-5 at 12–13. Regardless, it cannot fix her standing problem, because defamation has different and stricter elements than a FCRA claim. Defamation requires a "false statement … capable of damaging the plaintiff's reputation in the community." *White v. BCBS of Mass.*, 442 Mass. 64, 66 (2004). Plaintiff identifies no way in which her "reputation in the community" could have been affected by anything false in RentGrow's report, as opposed to what was indisputably true. Defamation claims also "cannot be sustained for truthful information in a credit report, even if the information reported supports misleading inferences" and even if the report is "deficient" under FCRA. *Gorman v. Wolpoff & Abrahamson, LLP*, 584 F.3d 1147, 1169 (9th Cir. 2009). Plaintiff's unsupported claim to have been "defamed" thus cannot supply the "common law" injury that would serve as concrete harm. *Spokeo*, 136 S. Ct. at 1549.

Separately, Plaintiff misapprehends *Lujan*'s "causal connection" requirement. RentGrow's arguments about the broken causal chain have nothing to do with whether its report is "the most immediate" or "proximate" cause of Plaintiff's claimed injuries, as she supposes. Opp. at 7. The problem is not that there is *another* intervening link on the causal chain *between* the report and her claimed injuries; the problem is that there is no link at all without evidence "that allegedly inaccurate information on that report was the *cause* of [the] denial" of her rental application. *Cahlin*, 936 F.2d at 1160–61. Plaintiff's argument that "her testimony about her emotional distress simply highlight[s] the existence of a disputed issue of material fact for the jury to decide" (Opp.

at 7 n.4) misses the point. The threshold issue is not whether Plaintiff was distressed or not, but whether the apartment denial that distressed her was caused by an inaccuracy in her report or her own history. *See*, *e.g.*, *Nelson v. Nationstar Mortg., LLC*, 2020 WL 7029896, at *8 (S.D. Ala. Nov. 30, 2020) (granting summary judgment because "plaintiffs have made no showing that any such emotional distress damages *resulted from* the alleged FCRA violation.… They leave the Court guessing as to both what that causal link might be, and what evidence might support its existence").

Plaintiff claims the report deprived her of "the real-world benefit of having satisfied the judgments against her." Opp. at 6. It did not. The fatal problem is that no law confers the "benefit" Plaintiff imagines herself entitled to: the benefit of requiring others to pretend that her litigation history never happened. RentGrow was not required to ignore that history when compiling its report, and Alden Park was not required to ignore it when evaluating her application. Thus Plaintiff lacks the "invasion of a legally protected interest" required for standing. *Spokeo*, 136 S. Ct. at 1548. The interest she claims is not "legally protected" at all.

### III.

### RENTGROW'S PROCEDURES WERE INDISPUTABLY REASONABLE.

Just as she did with the accuracy element, Plaintiff insists, without empirical support, that the reasonableness of the defendant's procedures is a jury question in the "majority" of cases. Opp. at 13. As with accuracy, RentGrow has cited voluminous case law deciding the matter on summary judgment (*see* Mot. at 24–27), while Plaintiff identifies no material fact question to send to the jury in *this* case, regardless what claims she wants to make about the "majority."

The theory pled in Plaintiff's complaint and repeated in her opposition brief is that FCRA requires credit reporting agencies to "retriev[e] the actual underlying court records themselves" instead of using "vendors." Compl. ¶ 10; *see also* Opp. at 14. That proposition is false as a matter of law. FCRA expressly permits CRAs to resell "information contained in the database of another

consumer reporting agency." 15 U.S.C. § 1681a(u)(1)–(2). So Plaintiff cannot rely on RentGrow's use of a vendor as the "specific fact" on which a jury verdict in her favor can be based.

If that fact standing alone cannot support Plaintiff's claims, then what *additional* fact can do so? Plaintiff grasps at several straws, but none suffice.

First, Plaintiff calls RentGrow's reliance on TU BDS "blind." Plaintiff repeats this charge five times, as though a repetitive incantation could substitute for record evidence. *See* Opp. at 2, 3, 14. But the undisputed evidence is to the contrary. RentGrow submitted uncontested evidence that it applies its own "filter[ing]" process to TU BDS's results to eliminate unwanted content like dismissed cases. ECF No. 90-4 ¶ 6. From October 2016 to October 2018, TU BDS provided RentGrow with civil court records for 380,559 screenings, and RentGrow's filtering process reduced the number of screenings reporting civil court records to 272,893. *Id*. at ¶ 9; SUF ¶ 58. Eliminating more than a quarter of the records received is not "blind and unquestioning reliance." The record also contains uncontroverted testimony that RentGrow re-evaluates TU BDS "on a regular basis," "regularly" comparing "the breadth of [competitors'] searches and the quality of the data they sell … to what we get with Trans Union." ECF No. 93-2 at 214–19. And "each time" RentGrow did its "review to justify keeping our business with Trans Union, … they have come out on top, as being the best provider of this data." *Id*. at 216. So naked, unsupported assertions of blindness also cannot be the "specific fact" on which a verdict in Plaintiff's favor can be based.[3]

---

[3] In her last incantation of the charge, she finally makes it apparent that all she's arguing is that reliance on records furnished by another CRA is "blind" unless the reseller "itself consult[s]" the "court records." *Id*. But that is exactly what FCRA and the case law say a reseller need not do. *See* 15 U.S.C. § 1681a(u); *Rydholm v. Equifax Info. Servs., LLC*, 2020 WL 6278969  at *3 (D. Minn. Oct. 23, 2020) (defendant "not required to comb through individual [] dockets"); *McCann v. Careerbuilding Empl. Screening, LLC*, 2018 WL 3978994, at *4 (W.D. Mo. Aug. 20, 2018) ("There is no question that it is unreasonable to ask Defendant to dispatch agents to county courthouses and other record repositories … in order to make individualized inquiries concerning every person"); Mot. at 26–27 (collecting cases).

Next, Plaintiff contends that TU BDS is not a "presumptively reasonable source" because "there is no evidence of record concerning how it acquired the eviction litigation information about McIntyre." Opp. at 14. But any lack of record evidence on the challenged procedure is Plaintiff's problem, not RentGrow's. "[A] plaintiff cannot rest on a showing of mere inaccuracy, shifting to the defendant the burden of proof on the reasonableness of procedures for ensuring accuracy." *Stewart v. Credit Bur., Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984). Plaintiff cites no evidence that TU BDS is *not* presumptively reliable, so her invitation for the Court to reject the precedents like *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994), upholding CRAs' use of "presumptively reliable source[s]" (Opp. at 14) should not be indulged. The cases are on point. Regardless, Plaintiff is wrong about the "evidence of record." The undisputed testimony is that TU BDS "receiv[es] data on a daily basis" directly "from courthouses or other companies that aggregate the data from courthouses." ECF No. 93-2 at 40–41. If it is reasonable for a CRA to rely on a court docket, as *Henson* held, then it is also reasonable for a reseller to rely on that CRA.

Lastly, Plaintiff argues that "[a] reasonable jury could infer" that TU BDS's records were "not to be used for consumer reporting purposes" because ████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████. Even if there were merit to this theory, Plaintiff is not entitled to pursue it. RentGrow served interrogatories requiring her to "[i]dentify all facts and [] documents" that support her claim of unreasonable procedures, and her response never mentioned ████████████ ECF No. 90-5 at 5. She thus can't rely on it "to supply evidence on a motion" after discovery has closed. FED. R. CIV. P. 37(c)(1).

Regardless, as a matter of law and undisputed fact, *no* jury could infer from ████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

All of Plaintiffs' theories amount to an attempt to argue that even though FCRA permits resellers to rely on outside vendors *in theory*, there are no vendors good enough to rely on in practice. She claims that TU BDS isn't good enough (Opp. at 13), that the other "Big Three" CRAs—Equifax and Experian—aren't good enough, either (Compl. ¶ 13), and she has another lawsuit complaining that their competitor, LexisNexis, *also* isn't good enough. *See McIntyre v. RealPage, Inc.*, No. 18-3934, ECF No. 41-1, at 7 (E.D. Pa. filed Mar. 20, 2020). But reasonable procedures are not judged in a vacuum against Platonic ideals of costless perfection. Plaintiff must propose some reasonable "alternative procedure" that would do the job more accurately.[4] The only

---

[4] *O'Brien v. Equifax Info. Servs., LLC*, 382 F. Supp. 2d 733, 737–38 (E.D. Pa. 2005) (plaintiffs

alternative she urges is exactly what FCRA says RentGrow need *not* do—collect court records on its own. And Plaintiff does not even claim this would lead to any greater accuracy. Had RentGrow manually accessed the *Kinsale I* court docket, pulled the complaint seeking $1,791.50 in unpaid rent, and reported that fact along with the subsequent $2,396.50 judgment and judgment release, it would have resulted in exactly the same information on the report "that provoked [Plaintiff's] complaint" against using TU BDS. *McCann*, *supra*. Further, the reasonableness of a procedure cannot be judged in isolation from its costs. An alternative procedure imposing "background research" requirements that "substantially increase the cost" of a screening service is not a reasonable alternative as a matter of law. *Henson*, 29 F.3d at 285; *see* Mot. at 26–27.

"[V]irtually every" business uses outside service providers, and "the only effect" of reading a federal statute to impose liability for contracting with others instead of performing the same function in-house would be "to encourage vertical integration." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997). That is not FCRA's purpose. FCRA is intended to promote "fair and accurate credit reporting," 15 U.S.C. § 1681(a)(1), and Plaintiff fails to show how this interest is disserved by RentGrow's procedures, or how it would be served by her proposed alternative.

## IV.

### THERE IS NO EVIDENCE OF WILLFUL NONCOMPLIANCE.

There is no precedent for finding willfulness under the fact pattern of this case. This case does not fit into any of the *Safeco* categories: There is no claim of actual knowledge of a violation,

---

survived summary judgment "by presenting evidence of additional or alternative procedures that Equifax could have taken" that, had they "been in place" sooner, "there would not have been an inaccuracy in the [plaintiffs]' credit report"); *see also*, *e.g.*, *Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015) (judging reasonableness of defendant's procedures against alternative "procedure urged by the plaintiff"); *McCann*, 2018 WL 3978994, at *4 (dismissing § 1681e(b) claim because "Plaintiff does not offer an alternative reasonable procedure that would have corrected the allegedly misleading statement that provoked his complaint").

no statutory language RentGrow misread contrary to established precedent, no alleged defiance of warning signs. *See* Mot. at 28–30. Plaintiff misses the point of RentGrow's references to *Safeco* when she declares, "Defendant does not develop its 'reasonable reading' *Safeco* argument, failing to even articulate any alternative reading of the statute." Opp. at 16. The reason RentGrow did not "develop" that argument is because RentGrow didn't make it. RentGrow argued the opposite, that this is "not" a case that turns on competing statutory constructions. Mot. at 29. Plaintiff must therefore have some *other* basis for claiming willful defiance of FCRA, and she has none.

Plaintiff asserts that "[m]ultiple circuit courts have instructed CRAs on what they must do to comply with section 1681e(b) when using public records." Opp. at 17. None are apropos here, and Plaintiff articulates no rule they set forth that RentGrow somehow transgressed. *Ramirez* and *Cortez* both involved claims that a "name-only matching protocol" falsely matched the plaintiffs to names on a terrorist watch list. *Id.* at 14 n.11. *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996), involved a claim that the defendant mixed up a "Sr." Philbin with a "Jr." Philbin, and *Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997), involved an identity-theft victim protesting credit cards taken out in her name. Here, in contrast to all of them, Plaintiff isn't claiming the eviction records belong to anybody other than her. What's more, *Cushman* expressly *rejects* Plaintiff's theory that § 1681e(b) requires a CRA "to go beyond" its source of information when issuing a report, endorsing the very rule of *Henson* that Plaintiff urges this Court to reject. *Id.* at 224–25. Thus, citing *Cushman* for guidance on how "to comply with section 1681e(b) when using public records" (Opp. at 17) *precludes* a finding of willful noncompliance, rather than supporting it.

Plaintiff's effort to claim the benefit of agency guidance is similarly unavailing. Plaintiff claims that CFPB examiners directed *other* CRAs—*not* RentGrow—to implement more "effective oversight of public records providers." Opp. at 17. Plaintiff cannot carry her burden as to

-14-

RentGrow by complaining about other CRAs. As to RentGrow, the undisputed evidence is that no agency has ever challenged its public records reporting. SUF ¶ 57. Regardless, *Safeco* holds that the guidance necessary to support a claim of willful noncompliance must be "authoritative" and "clearly established" in a manner similar to the standard for assessing qualified immunity. 551 U.S. at 70. Vague references to practicing "effective oversight" fall far short of that.

Plaintiff finally asserts "[t]here is evidence of an error rate over 85% for the relevant population." Opp. at 18. There isn't. Plaintiff misrepresents what "the relevant population" is, and also misrepresents what the "85%" connotes. The figure comes from Plaintiff's claim that "85% of [the] disputed eviction records" were updated post-dispute. ECF No. 93 at 2. But "the relevant population" is *all* consumers reported on, not merely the small number who raised disputes. In *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604 (6th Cir. 2016), a "dispute rate [of] only .2%" among "10 million [] background reports a year" mandated judgment for the defendant on willfulness. *Id.* at 607–11. RentGrow's "dispute rate," by the same measure, was an even-lower 0.06% (2,953 out of 4,816,656). ECF No. 90-4 ¶¶ 9–11. The proportion of *successful* disputes is even lower—and Plaintiff has no evidence how many of those corrected an inaccuracy, as opposed to making updates based on events transpiring after the report was made. *See* ECF No. 98 at 7, 14.

Plaintiff's insistence that "a jury must ultimately decide" willfulness (Opp. at 19) gets her nowhere without specific facts on which a verdict of willfulness could be based. Absent such facts, cases granting summary judgment on willfulness are legion.[5] This Court should do the same.

---

[5] *E.g.*, *Smith*, *supra*; *Fuges v. S.W. Fin. Servs., Ltd.*, 707 F.3d 241 (3d Cir. 2012); *Philbin*, *supra*; *Dalton v. Capital Assoc. Indus.*, 257 F.3d 409 (4th Cir. 2001); *Waletzko v. Corelogic Credco, LLC*, 2016 WL 5879597 (W.D. Wis. Oct. 7, 2016); *Wenning v. On-Site Mgr., Inc.*, 2016 WL 3538379 (S.D.N.Y. June 22, 2016); *Murray v. Indymac Bank FSB*, 2007 WL 2741650 (N.D. Ill. Sept. 13, 2007); *Anderson v. Trans Union, LLC*, 345 F. Supp. 2d 963 (W.D. Wis. 2004); *O'Connor v. Trans Union Corp.*, 1999 WL 773504 (E.D. Pa. Sept. 28, 1999); *Whelan v. Trans Union Cred. Rep. Agency*, 862 F. Supp. 824 (E.D.N.Y. 1994).

Respectfully submitted,

*/s/ James W. McGarry*

James W. McGarry (BBO No. 633726)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Telephone: (617) 570-1000
jmcgarry@goodwinlaw.com

Dated: December 14, 2020                    *Attorney for Defendant RentGrow, Inc.*

**CERTIFICATE OF SERVICE**

I, James W. McGarry, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 14, 2020.


*/s/ James W. McGarry*
James W. McGarry